HANEY v. STATE.

[92 South. 627. No. 22483.]

1. CRIMINAL LAW. *Error cannot be predicated on irregularity in
drawing jury in absence of evidence that accused not fairly tried.*
Where there is no evidence that accused was not tried by a fair
and impartial jury, error cannot be predicated upon irregularity
in the drawing or impaneling thereof. Section 2692, Code of

1906, in relation to impaneling juries, is made directory by secton 2718, Code of 1906.

2. HOMICIDE.  *Statement of deceased admissible as dying declaration only if made in extremis, and burden on state to show such fact.*
   Before a dying declaration is admissible, the declarant must have a sincere and settled belief of his impending dissoluton, and have lost all hope of recovery, however slight.  The burden of proof to show this is upon the state before the declaration is admissible.

3. CRIMINAL LAW.  *Statement of deceased that accused shot him for nothing, made immediately after shooting, held not part of the res gestae.*
   A statement of a person shot made a minute or two after the shooting, in the absence of the accused, to the effect that the accused shot him, and shot him for nothing, is merely the rehearsal or history of the shooting, a past transaction, and is not admissible as a part of the *res gestae*.  This statement is in no sense a verbal act explaining any part of the difficulty, and constituting a part of it.

4. CRIMINAL LAW.  Homicide.  *Admission of statement of deceased, not part of res gestae nor dying declaration, reversible error.*
   In this case the deceased had threatened to take the life of the appellant.  There were no eyewitnesses to the shooting, which occurred at night upon a street.  The accused shot deceased once with a shotgun.  The defense was self-defense, the accused claiming that the deceased, a much larger man, had just thrown a brick at him, and was at the time of the shooting in the act of assaulting him with a wooden picket.  *Held*, that it was reversible error to admit in testimony the statement of the deceased above quoted, since it was neither a part of the *res gastae* nor a dying declaration.

APPEAL from circuit court of Jones county.
HON. R. S. HALL, Judge.
Houston Haney was convicted of murder, and he appeals.  Reversed and remanded.

*Currie & Currie,* for appellant.

It is apparent to this court without further argument on this point, that the statement or declaration made by

the deceased, was not competent as a dying declaration. We cite as conclusive on this proposition, the following: In the case of the *State* v. *Bell,* 17 So. 232, the court held: "That it was error to admit a dying declaration, without full inquiry into all of the circumstances under which they were made and with an examination of all witnesses able to throw light on the matter." There was no such inquiry or investigation made by the court or the district attorney in the present case.

These declarations or utterances by the deceased were permitted to be proven by the court without reference to circumstances or conditions under which they were made and without reference to the condition or state of mind of the deceased with reference to whether or not he believed he was going to die. This testimony, was, as has been said, highly prejudicial to the defendant, and in our humble judgment, must cause a reversal of this case.

This court well understands without our rehearsing the reasons why such testimony should not be given, unless qualified as required by law. *State* v. *McNeill,* 76 So. 625. On this point, we cite the following: *Fawn* v. *The State,* 101 Miss. 389, 58 So. 2; *Bell* v. *The State,* 72 Miss. 507, 17 So. 232, and numerous other. *Sparks* v. *The State,* 74 So. 123.

We submit that the foregoing authorities are conclusive upon the proposition of the incompetency of the declaration or statement of the deceased in this case. There was no qualification whatever made by the state through its district attorney, or the court, who also, as will be seen from the record engaged in the cross examination of witnesses at its pleasure. This testimony was purely hearsay.

The declarations or statements made by the deceased after he was shot, were not a part of the *res gestae.* The deceased had been shot and the appellant was not present when the statement or declarations were made. The difficulty was a completed affair, and everything that the

deceased said was nothing more than a narrative of the past event, and could not under any theory be held to be a part of the *res gestae*. *Field* v. *The State,* 57 Miss. 474; *Fondron* v. *Durfree,* 39 Miss. 324; *Granger Insurance Company* v. *Brown, ante,* 308; 34 Am. Rep. 446; *Denton* v. *The State,* 1 Swan (Tenn.) 279; *Kraner* v. *The State,* 61 Miss. 158.

In *Mays* v. *The State,* 64 Miss. 333, 1 So. 735, 60 Am. Rep. 58, the question of *res gestae* is fully discussed by the court and clearly defined, and while it seems that the courts up to this time had not clearly defined or formulated a definition of the term, our court in this case clearly held that, to constitute the declarations or statements a part of the *res gestae,* they must be made during the affray. *Lewis* v. *The State,* 68 So. 785, 109 Miss. 586.

We might cite other authorities on this subject, but we feel that from the above decisions, the point under discussion is too well settled to require further argument or citation, and summing up this point, there can be no serious contention made disputing the fact that this testimony offered by the state was purely hearsay, was incompetent, was improperly admitted by the court and resulted in the conviction of the defendant for which he is entitled to a reversal of this cause.

*H. T. Odom,* assistant attorney-general, for the state.

Briefly the errors relied on by the appellant herein may be stated as follows: First: the action of the trial court in instructing the sheriff not to impose on the farmer friends in getting talesmen, but to go into the stores and banks and get them; Second: the admission of evidence as to statements of the deceased after he was shot.

As shown by special bill of exceptions at page 23 of the record, after the regular panel had been exhausted the court gave the sheriff the following instruction: "Mr. sheriff, don't impose on our farmer friends here, but go

down in town and get business men to fill the panel. Get them out of the stores and banks and make them come up here and serve on the jury.''

While it is admitted that this order is rather unusual, we see no harm to the appellant from this action of the court. If the court had said, ''Go out and pick men who will convict,'' it would be quite different, but there is nothing in the statements of the court to indicate that he had any feeling in the case. No by-stander or any member of the jury already accepted, if they heard the statement (which the record does not disclose) could have inferred that the court wanted men on the jury who would convict. Certainly this action of the court could not in any manner be calculated to prejudice the rights of the appellant or deprive him of his right to a fair and impartial trial by twelve unbiased jurors. This assignment is wholly without merit, and is not pressed by counsel for the appellant.

Passing now to the competency of the statements made by the deceased after he was shot. Counsel for the appellant have quoted at length from the evidence, and I deem it unnecessary to burden the court by setting out this testimony again. Suffice it to say that several witnesses testified in substance that forthwith after the shooting the deceased exclaimed ''Oh, Lordy, Lordy! you shot me and you shot me for nothing.'' Some of the witnesses said that the words used were: ''Oh, Oh! Houston shot me and he shot me for nothing.'' Whatever the words may have been, the substance of the statements are the same, and the fact that this statement of the deceased was made immediately after the shooting and almost simultaneously therewith, all of the witnesses who testified on that point agree, and the evidence of Callie Evans, shows that the appellant had not left the scene of the tragedy when the deceased made this statement.

In the case of *Mays* v. *State,* 1 So. 735, relied on by counsel for the appellant, it is held that the *res gestae*

may extend over weeks and months even, and that each case must be determined by its own particular merits. The case of *Field* v. *State,* 57 Miss. 474, is not in point and is easily differentiated from the case at bar, the declaration there being by a poisoned person as to her husband giving her coffee 'about an hour before. The court held this incompetent, but in rendering an opinion used in part the following language. ''The exception to the rule that declarations, in order to be admissible, must be simultaneous or contemporaneous with the principal event, as deduced from these and similar cases, seems to rest upon the idea that the interval of time has been very brief, proffering assistance or making inquiry, and that there has been neither opportunity nor motive for fabricating a false story.''

Therefore the first statement of the deceased therein was admissible under the *res gestae* rule being simultaneous with the shooting, and the last case coming within the exception as stated, by the court in the *Fields case, supra.*

We contend further that said statements of the deceased were admissible as dying declarations, notwithstanding argument of counsel for the appellant to the contrary, who contend that the proper predicate was not laid to make these statements admissible as dying declarations. It will be noted that these statements were made under the following circumstances, as disclosed by the record. After the deceased had been shot in the stomach with a shot gun; that he was lying on the ground prostrate, and helpless; that he asked his neighbor to say a prayer for him; that he never expressed any hope of recovery; that he died within thirty minutes or an hour after being shot.

The statements referred to and made under the foregoing circumstances are clearly competent in a case of this kind, and these statements were properly admitted by the court in the trial of the appellant, and this we be-

lieve we will be able to show by the authorities cited and relied on by the appellant in this case:

Appellant contents himself with the case of *Bell* v. *State,* 17 So. 232, and makes the point that this case is decisive of the proposition under discussion. We direct the court's attention to a portion of the opinion in the *Bell case, supra,* where the court quotes from Greenleaf on Evidence. 1 Greenleaf, Ev., sec. 158.

From an inspection of the *Bell case, supra,* it will be seen that the evidence said to be introduced in that case was held to be incompetent as a dying declaration, because it did not come within the rule laid down by Greenleaf as quoted above, for the simple and manifest reason that the deceased in that case entertained a hope of recovery, and the court specifically holds that it was incompetent for this reason, it being shown directly from the evidence in that case that the deceased had not given up all hope, evidence of this fact being that deceased made a proposition to one of the parties present at the time he made the alleged dying declaration to the effect that if the party would sell him some meat on a credit, he would pay him when he got well. Likewise in all the cases cited by the appellant on this point, the deceased had not given up all hopes of recovery, which will be seen from an examination of the authorities. Our court has held such statements as the deceased made in this case competent, where the predicate laid down was no stronger than the case at bar. In support of this contention, we cite the following authorities: *Jackson* v. *State,* 94 Miss. —, 38 So. 502; *House* v. *State,* 98 Miss. 107, — So. 3, 21 L. R. A. (N. S.) 84 and notes; *Welcher* v. *State,* 54 So. 726; *Beauchamp* v. *State,* 91 So. 202.

We see little of comfort to the appellant in the many statutes reviewed by counsel as to the manner of selecting juries in the face of section 2211, Hemingway's Code, which provides. "2211. Jury Laws Directory.—All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely; and

a jury listed, drawn, summoned or impanelled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impanelled and sworn; and shall have the power to perform all the duties devolving on the jury.''

The authorities cited by counsel in support of their contention are easily differentiated from the case at bar. In those cases particular names selected for grand jury services were drawn by the court with the knowledge at the time of the names of the persons drawn. We heartily concur in the condemnation of the practice in those cases, for the apparent reason that such procedure would open the doors of fraud whereby those charged with crime might be prejudiced, or, on the other hand, the state might not be able to get a fair and impartial trial.

In the case at bar no prejudice to the right of the appellant are claimed. It is not insisted that appellant was not tried by a fair and impartial jury. *Brown* v. *Gilliam, ex'r,* 43 Miss. 641; *Ferguson* v. *State,* 107 Miss., 559, 65 So. 584; *Buchanan* v. *State,* 84 Miss. 332, 36 So. 388.

The most recent case on this point that has come under our observation is the case of *McVey* v. *State,* reported in 78 So. at page 150. *Simmons* v. *State,* 109 Miss. 605, 68 So. 913; *Lewis* v. *State,* 91 Miss. 505, 45 So. 360; *Cook* v. *State,* 90 Miss. 137, 43 So. 617. As to the second statement made by the deceased, from a reading of the record it will be noted that this statement was made only a few seconds after the shot was fired. It was made to the deceased's neighbor before the deceased had an opportunity to think the matter over, and we think it was clearly admissible both under the *res gestae* rule and the rule of admitting dying declarations. But if we be mistaken in this contention, we do not believe that the admission of this testimony was prejudicial to the rights of the appellant, because it cannot be successfully denied that the first statement made by the appellant was admissible under the *res gestae* rule of evidence.

Again, considering the case as a whole, we are unable to find any errors in this, resulting to the prejudice, of the appellant's rights. Indeed, if any errors were committed, a careful reading of the record will disclose the facts that such errors were harmless errors and that the appellant was tried by a fair and impartial jury.

SYKES, J., delivered the opinion of the court.

Houston Haney was convicted of murder and sentenced to life imprisonment in the penitentiary, from which judgment this appeal is prosecuted.

There are several assignments of error presented in this case.

There was no special venire, and in impaneling the jury it became necessary for the sheriff to summon other jurors, whereupon the court instructed him as follows:

"Mr. Sheriff, don't impose on our farmer friends here, but go down in town and get business men to fill the panel. Get them out of the stores and banks and make them come up here and serve on this jury."

A special bill of exceptions was taken to this action on the part of the court. From the record, however, we infer that the defendant had a fair and impartial trial by a jury composed of twelve fair and impartial men, and, in the language of the opinion of the court, in *Ferguson v. State,* 107 Miss. 559, 65 So. 584:

"Since there is no evidence that appellant was not tried by a fair and impartial jury, error cannot be predicated of an irregularity in the drawing or impaneling thereof, since the statutes on the subject are declared, by section 2718, Code of 1906, to be directory merely"—citing authorities.

The testimony in the case shows that the appellant shot the deceased with a shotgun, inflicting a wound from which the deceased died in about an hour. There were no eyewitnesses to the shooting. Some negroes who lived about forty-five yards from the place of the shoot-

ing testified to hearing a part of a conversation between the two men just before the gun fired. One or more of them heard the deceased say, "All right, Houston, all right," and immediately thereafter the gun fired. Shortly after the firing of the gun several witnesses testified to hearing the deceased make a statement to the effect that Houston shot him, and shot him for nothing. All of this testimony of the several witnesses was objected to by the defendant on the ground that it was neither a dying declaration not was it a part of the *res gestae*. This objection was overruled, and the testimony admitted.

Dan Evans testified that he was in his house about forty-five yards away; that after the gunshot he jumped out of bed and started to the scene of the killing; that when he reached there the deceased stated to him: "I am shot. Houston shot me for nothing. Pray for me."

The testimony all shows that the appellant had left the scene of the shooting when this statement was made. After hearing the shot the witness had to get out of bed, put on his trousers, and travel forty-five yards to the place of the shooting before the statement was made. This statement was not a dying declaration. The deceased asked the witness to pray for him, which, if it indicates anything, would rather indicate the hope of recovery, and that he wished the witness to pray for his recovery.

The law is well settled in this state that before a declaration of this character is admissible the declarant must have a sincere and settled belief of his impending dissolution, and have lost all hope of recovery, however slight. And, in order to make a declaration of this character admissible, the burden of proof is upon the state to show these facts. *McNeal* v. *State,* 115 Miss. 678, 76 So. 625; *Bell* v. *State,* 72 Miss. —, 47 So. 232.

Neither was this statement admissible as a part of the *res gestae*. It was in no sense a part of the shooting, or of the difficulty between the two men. Though made a short while after the shooting, yet the shooting was

over, the tragedy was completed, when the statement was made. This statement was in no sense a verbal act explaining any part of the difficulty, and thereby constituting a part of it, but was merely the rehearsal or history of the shooting, which was at that time a past transaction. This rule is aptly stated in the case of. *Mayes* v. *State,* 64 Miss. 333, 1 So. 735, 60 Am. Rep. 58. It is there said that:

"It is not enough that the statement will throw light upon the transaction under investigation, nor that it was made so soon after the occurrence as to exclude the presumption that it has been fabricated, nor that it was made under such circumstances as to compel the conviction of its truth; the true inquiry, according to all the authorities, is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part, or is merely a history or a part of a history of a completed past affair. In the one case it is competent, in the other it is not."

See, also, *Lewis* v. *State,* 109 Miss. 586, 68 So. 785.

Several other witnesses testified that after they heard the gun shoot they heard the deceased say that Houston shot him, and shot him for nothing. One of these witnesses estimates that this was about one or two minutes after the shooting. Another states that she had walked from her room to her gate when she heard this statement. The record, however, shows that there was an appreciable length of time between the shooting of the gun and the making of the statement. The statement purports to be a recital of the facts about the shooting, or the recital of a past transaction. This testimony was all incompetent, and should have been excluded.

The defense was that the deceased at the time of the shooting had just thrown a brick at the appellant, and was advancing upon him with a wooden picket. The testimony shows that the deceased was a much larger and more powerful man than the defendant; that he had repeatedly threatened to kill him, the last threat having

been made the morning of the shooting. In view of this testimony, we think that for the admission of these statements the cause should be reversed and remanded for a new trial.

There are other assignments of error in the record which have had our consideration, but which are not well taken.

*Reversed and remanded.*